457 A.2d 937

## CAMP CONSTRUCTION CORPORATION

v.

## LUMBER PRODUCTS COMPANY and Georgia-Pacific Corporation.

## Appeal of GEORGIA–PACIFIC CORPORATION.

Superior Court of Pennsylvania.

Argued Oct. 27, 1982.

Filed March 4, 1983.

384

Patrick O. McDonald, Philadelphia, for appellant.

Stephen M. Howard, Philadelphia, for Camp, appellee.

Before HESTER, WICKERSHAM and POPOVICH, JJ.

POPOVICH, Judge:

 Appellee-plaintiff, Camp Construction Company, purchased plywood from defendant, Lumber Products Company, which had been manufactured by Georgia-Pacific Corporation, the other defendant in the subject litigation. According to appellee, the plywood was manufactured in a defective manner. A trial was held by a judge, sitting without a jury, and a verdict was entered in the amount of $17,418.00 against Georgia-Pacific Corporation. Verdicts also were entered in favor of Lumber Products Company on its cross-claim against Georgia-Pacific and on the cross-claim Georgia-Pacific had filed against Lumber Products Company. Exceptions were denied, and judgment was entered upon praecipe by one of the parties.[1] This appeal by Georgia-Pacific Corporation followed. We affirm.

1. We note that the existence of certain procedural irregularities does not affect the validity of the instant appeal. First of all, appellant styled his motion, "A Motion for a New Trial" improperly since such a motion has been abolished in non-jury assumpsit actions. *See* Pa.R. C.P. 1038(d) and 1048; *Karpe v. Stroudsburg,* 290 Pa.Super. 559, 434 A.2d 1292 (1982). Even though the motion was captioned improperly; however, the trial court had to treat the motion as exceptions. *Id.*

 Second, the captions appearing on both briefs indicate that the order appealed is from the order dismissing the exceptions. However, such an order is interlocutory and unappealable. *Id.,* 290 Pa.Superior at 561, 434 A.2d at 1293. Notwithstanding this defect, the

On appeal, appellant contends that the trial court erred (1) when it allowed two lay witnesses to give expert testimony; (2) when it allowed one of the witnesses, Robert Kish, to state his opinion that the warping and delamination of the plywood were not caused by improper installation; and (3) when it allowed into evidence testimony by Jack Blumenfeld, the owner of Camp Construction Company, the appellee, that none of the plywood had warped or delaminated prior to installation. Appellant also contends that the verdict entered in favor of the plaintiff was against the weight of the evidence. We must reject appellant's contentions.

■ At the outset, we will consider appellant's claims concerning the admissibility of certain testimony. Generally speaking, " 'questions concerned with the admission or exclusion of evidence are within the sound discretion of the trial court and will be reversed on appeal only where a clear abuse of discretion exists.' " *Lewis v. Mellor*, 259 Pa.Super. 509, 515, 393 A.2d 941, 944 (1978) (quoting *Westerman v. Stout*, 232 Pa.Super. 195, 202, 335 A.2d 741, 745 (1975)).

For the most part, appellant's arguments involve whether statements made at trial can be classified as either fact or opinion evidence and also the related question of whether the individuals were testifying as lay witnesses or as experts.

The testimony challenged initially by appellant consists of statements made by Blumenfeld and by Kish. Blumenfeld's testimony reads as follows:

"BY MR. LAZAROFF [Attorney for Appellee]:

Q. Would you have? Would you have purchased lumber that would warp and delaminate for use in sub-flooring?

A. I try and buy the very best of everything that I am able to when I build a house, and even if I had been offered a bargain at a cheaper amount of dollars I would have turned it down anyhow. Our industry is hard

docket entries show that judgment was entered on June 23, 1982, after the appeal was taken. Thus, jurisdiction properly is with this Court.

enough as it is without also having the headache of a *bad piece of wood.*

MR. MC DONALD [Attorney for Appellant]: Objection, Your Honor, and move to strike.

THE COURT: Overruled."

(Emphasis added.)

Similarly, the remark made by Kish which appellant contends is objectionable can be found in the following portion of the trial:

"Q. Was all this work necessary because of the *defects* you found?

A. Yes, sir.

MR. LAZAROFF: No further questions.

MR. MC DONALD: Objection and move to strike on the question of defects that were found.

THE COURT: Overruled. I understand this is a factual determination to be made by the Court."

N.T. 98–99. (Emphasis added.)

To begin with, we have said the following:

"The decision whether testimony constitutes fact or opinion may be difficult, for '[t]here is no litmus test for fact versus opinion.' *Strausser v. Strunk,* 222 Pa.Super. 537, 544, 295 A.2d 168, 173 (1972) (PACKEL, J., dissenting); *see* 7 Wigmore, Evidence, § 1919 (Chadbourn rev. 1978). Often testimony that might be classified as opinion is nevertheless admitted almost as a matter of course. Statements such as 'it made an awful racket,' 'the weather was miserable', 'he looked drunk', are in a sense all opinions, but a little attention to our every day way of speaking will show that they are more accurately classified as shorthand, or compendious, statements of fact, based on personal observation. ('Well, when I say he looked drunk, what I mean is that he smelled of whiskey, his clothes were a mess, and he was swaying back and forth.') In such cases the experienced trial judge will admit the statement. To instruct the witness that he must 'tell us only the facts, not your opinions,' may

confuse or intimidate the witness; the judge may therefore decide to let the witness express himself naturally, leaving it to counsel to question the witness further, if elaboration or clarification is thought desirable. *See* McCormick, Handbook on Evidence, § 11 (West ed. 1972); *see also Wilson v. Penna. R. Co.*, 421 Pa. 419, 219 A.2d 666 (1966) (in close case trial judge's discretion respected); *Holton v. Gibson*, 402 Pa. 37, 166 A.2d 4 (1960) (testimony that automobile 'increased' speed was fact not opinion)."

*Lewis v. Mellor*, 259 Pa.Super. at 517–518, 393 A.2d at 946 (1978).

Also, the distinctions between the admission of lay or expert witness testimony has been set forth in the following manner:

"[A] lay witness ... would not be competent to express an opinion unless it *were both rationally based on his own perceptions and helpful to a clear understanding of his testimony or the determination of a fact in issue. Lewis v. Mellor*, 259 Pa.Superior Ct. 509, 393 A.2d 941 (1978). [A]n expert witness ... would not be competent to express an opinion unless it pertained to a subject 'so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman,' *Ragan v. Steen*, 229 Pa.Superior Ct. 515, 538, 331 A.2d 724, 736 (1974) (concurring opinion), and it appeared that the [witness] had 'sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in the search for truth.' *Id. See Kravinsky v. Glover*, 263 Pa.Superior Ct. 8, 396 A.2d 1349 (1979) (no error in qualifying witness as expert in psychology with special focus on driving phobia similar to plaintiff's); *Taylor v. Spencer Hospital*, 222 Pa.Superior Ct. 17, 292 A.2d 449 (1972) (error not to allow nurse to testify about standards for restraints where she had experience)."

*Commonwealth ex rel. M.B. v. L.D.B.*, 295 Pa.Super. 1, 10–11, 440 A.2d 1192, 1197 (1982).

Against this framework, appellant's initial contentions must be examined. First, that

"the [c]ourt [b]elow improperly allowed Jack Blumenfeld, the owner of plaintiff corporation, and Robert Kish to give what was in effect expert opinion testimony, even though plaintiff's Answers to Interrogatories indicated that plaintiff did not have an expert witness and would not introduce expert testimony. Second, that if the testimony of Jack Blumenfeld and Robert Kish was not expert testimony, it was nevertheless opinion testimony, and that there was no basis for allowing into evidence opinion testimony by lay witnesses going to the ultimate issue to be decided by the trier of fact." Brief for Appellant at 5.

With respect to these contentions, the trial court correctly stated the following:

"it should be noted that in numerous places they were listed as 'fact witnesses', eye witnesses' off [sic] witnesses with 'knowledge' of the incident. While the (Amended) Complaint in Assumpsit does not contain the phrase 'breach of warranty', such a theory is implicit once an Assumpsit Complaint alleges a 'defect' in purchased goods. Further, a positive response was given by plaintiff to Georgia-Pacific Corporation's interrogatory as to whether (there was) '... any breach of ... warranty.' It is axiomatic that warped and/or delaminated plywood is not 'merchantable', is not 'fit for a general purpose', and is certainly not 'fit for its particular purpose'. It is further axiomatic that, 'expert' or not, Jack Blumenfeld, who was a builder for 30 years (N.T. p. 6), who was knowledgable [sic] in all phases of construction (N.T. p. 7), who was a carpenter who ... handled lumber installing (N.T. p. 8), etc., *could properly testify because he personally observed the plywood in this case to be warped and delaminated.*

The same reasoning applies to the testimony of *Robert Kish, a highly experienced carpenter* (N.T. p. 90). Kish testified that even though the plywood was properly

installed (N.T. p. 97), it was warped and delaminated *according to his personal inspection.*"

Trial Court Opinion at 1–2. (Emphasis added.)

From the trial court's opinion, it is clear that the trial court believed Blumenfeld's and Kish's testimony because their "testimony was based on [their] personal observation[s]." *Lewis v. Mellor,* 259 Pa.Super. at 524, 393 A.2d at 949. Although the court highlighted Blumenfeld's experience (i.e., "who was a builder for 30 years .. knowledgable [sic] in all phases of construction", etc.) and Kish's qualifications (i.e., "a highly experienced carpenter"), the thrust of the court's decision to admit their testimony was because of their personal observations.

■ We note also that as witnesses, Blumenfeld and Kish could express their opinion about the "unfitness" of the plywood, which was not a subject beyond the "ken of the average layman." *Commonwealth ex rel. M.B. v. L.D.B.,* 295 Pa.Super. at 10–11, 440 A.2d at 1197.[2] Even the trial court stated, "[w]e are not talking about a highly sophisticated piece of machinery; we are talking about a 4 by 8 piece of plywood." (N.T. 114)

■ Alternatively, appellant contends that even if the testimony was not expert testimony, the comments made were unnecessary and should have been excluded. Even, however, if the responses were superfluous, we are not convinced that reversible error occurred.

Our Court has rejected "any rule that requires reversal simply because the opinion was unnecessary ... for it assumes the existence of reversal prejudice in every case." *Lewis v. Mellor,* 259 Pa.Super. at 521, 393 A.2d at 948. In this case, because appellant has not demonstrated any prej-

**2.** In this connection this Court has said the following:
"the concern of both § 402 [strict liability] and warranty law is with the *fitness* of a product, not the conduct of the producer as measured by due care."
*Smialek v. Chrysler Motors Corp.,* 290 Pa.Super. 496, 504, 434 A.2d 1253, 1257 (1981). (emphasis added).

udice and because our review of the record reveals none, a reversal is not warranted.

■ Additionally, reversible error has not occurred notwithstanding the possibility that the remarks challenged might have pertained to the ultimate issue to be decided by the trier of fact, the judge in this case. Even the court stated that the existence of defects was "a factual determination to be made by the Court." (N.T. 98–99) Moreover, we have said that "the mere fact that the opinion concerns an ultimate issue is insufficient." [3] *Lewis v. Mellor*, 259 Pa.Super. at 524, 393 A.2d at 949.

■ In the instant case, the trier of fact accepted the testimony of Blumenfeld and Kish, witnesses for the plaintiff-appellee, "[d]espite some expert testimony introduced on behalf of Georgia-Pacific Corporation", trial court opinion at 2–3. Since this determination was within the realm of the finder of fact, this Court will not disturb the trial court's resolution of the issue. *See Kuisis v. Baldwin-Lima-Hamilton Corporation*, 457 Pa. 321, 338, 319 A.2d 914, 924 (1974). *See also Commonwealth v. Jennings*, 285 Pa.Super. 295, 301 n. 6, 427 A.2d 231, 233–4 n. 6 (1981).

■ Similarly, Kish's testimony established that the supports, "the trusses [,] were all in accordance to specifications." (N.T. 97) That testimony further showed that Kish had physically examined the sites of the complaints. (N.T. 97) When asked what he had found during his examination, Kish responded, "Plywood delamination". (N.T. 97)

From the above testimony, we are not prepared to adopt appellant's argument that Kish offered an expert opinion when he stated that the supports were installed "according to specifications." (N.T. 97) Rather, a fair reading of the

3. In *Lewis, supra,* this Court adopted the federal rule approach in this area and rejected the ultimate issue rule. That rule, 704, states the following:
 "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces *an ultimate issue to be decided by the trier of fact.*" *Id.* 259 Pa.Super. at 522, 393 A.2d at 948. (Emphasis added).

testimony shows that this "lay witness [was] speak[ing] from personal knowledge (the witness must describe what he saw, heard, felt, tasted, smelled)." *Lewis v. Mellor,* 259 Pa.Super. at 518, 393 A.2d at 946. Appellant contends that Kish's observations were not based on personal observation because he admitted installing the plywood "[o]n occasion". (N.T. 95) This remark, however, must be examined in the following context:

"BY MR. LAZAROFF [Appellee's Counsel]:

Q. Mr. Kish, I hand you what has been marked as P–3 and ask you to tell us what that is?

A. It is a piece of five ply fir, texture 111.

MR. MC DONALD [Appellant's Counsel]: I didn't catch all of that.

THE WITNESS: Texture 111.

MR. LAZAROFF: Thank you.

BY MR. LAZAROFF:

Q. Now, you said the plywood you examined at the time on the job was delaminated?

A. Yes, sir.

Q. Using that exhibit in your hand can you explain to His Honor what exactly happened, what exactly you saw?

A. Well, you can clearly see that the plywood is five plies thick. Some of the top plies came off, some of the delamination was in the center plies, it was not on the top ply. You couldn't see it visually, you felt that when you walked across it, it bubbled, much like a blister on paint.

Q. Did you walk across that?

A. Yes, sir.

Q. In your experience, if you knew plywood would— what did you say, crack—would delaminate, would you have used that and still put in floors?

MR. SURKIN [Attorney for Lumber Products]: Objection.

MR. MC DONALD: Objection.

THE COURT: Sustained.

BY MR. LAZAROFF:

Q. In your opinion, was it necessary to replace that plywood that was replaced?

A. Yes, sir.

MR. MC DONALD: Objection, Your Honor.

MR. SURKIN: Objection.

THE COURT: Overruled.

BY MR. LAZAROFF:

Q. Why?

A. We had complaints from customers, we had bubbles in kitchen floors, we had squeaks in bedroom floors, squeaks in the hallways when you walked across it.

Q. Did you go out and verify those complaints?

A. Yes, sir, I did.

Q. And what did you find when you verified those complaints, when you checked those complaints?

A. We had to pull the floor up where there were complaints and we found plywood that was delaminated.

Q. Now, did you also examine the support of the plywood, that is, the trusses?

A. Yes, sir.

Q. In your opinion, was that plywood properly supported?

A. Yes.

MR. MC DONALD: Objection.

THE COURT: Sustained.

MR. LAZAROFF: Your Honor, in this case here, really, he's a fact witness.

THE COURT: I think there is a way to ask the questions, but I am not going to ask them for you.

BY MR. LAZAROFF:

Q. *You observed the installation of that plywood?*

A. *On occasion.*

Q. Now, how was that supported on the floors?"

(N.T. 93–95)

Thus, although the record shows that Kish examined the *installation* of the plywood "on occasion", Kish's testimony also reveals that he had verified the complaints by

"pull[ing] the floor up where there were complaints", and also by examining the support of the plywood. (N.T. 95) On these facts, there is no doubt that Kish's statements were based on personal observation.

■ Appellant next contends that the trial court erred when it allowed Blumenfeld to testify that none of the plywood had warped or delaminated prior to installation. According to appellant, this testimony was introduced improperly since "Blumenfeld had no firsthand knowledge of this matter, ..." and that he was simply stating his opinion that his carpenters would not install plywood which was warped. Brief for Appellant at 9. Again, the record shows that appellant's argument does not afford it a basis for reversal.

The testimony elicited at trial shows that Blumenfeld was involved actively as a builder in each one of the jobs he had in connection with the laying of the floors. In fact, "he [was] on every job every day." (N.T. 10) The flooring problem came to Blumenfeld's attention because as his employees were sweeping our floors, "we were starting to get a rippling effect on account of the plywood ...." (N.T. 12) As a result, in some instances, "we picked it [, the plywood], up ahead of covering over those sub-floors, but in other instances the sub-floors were already covered over with either a carpet or a tile, and we then had to go back in those, which were often occupied houses." (N.T. 13) Blumenfeld testified further that he had seen the carpenters putting the floors down and that most of the sheets had warped. (N.T. 47) Blumenfeld explained that although the plywood was not examined at the time of delivery, a carpenter usually, at the time of installation, "picks up a piece of wood ... and hopes he can install it. Visually, as he picks it up he can see if it is or isn't any good, and if it isn't he simply casts it aside." (N.T. 63) The witness added that he had no knowledge of any pieces of plywood received from Lumber Products which were discarded by the carpenters prior to their installation. (N.T. 65) Blumenfeld also stated that only "a short amount of time" elapsed from the time of

delivery of the plywood until he first noticed problems with the plywood and that it was "a matter of weeks" from the time of installation until the time that the plywood problems were detected. (N.T. 65) In the context of this trial, Blumenfeld's affirmative response to a question posed by defense counsel concerning whether the plywood "had looked all right" at the time of installation, (N.T. 65–66) although technically can be viewed as an opinion is "more accurately classified as shorthand, or compendious, statements of fact, based on personal observation." *Lewis v. Mellor*, 259 Pa.Super. at 517, 393 A.2d at 946.

Appellant's final argument is that the verdict of the court was against the weight of the evidence. The general rule is that a "new trial should be granted only where the verdict is so contrary to the evidence as to shock one's sense of justice." *Jacob Kline Cooperage v. George W. Kistler*, 286 Pa.Super. 84, 87, 428 A.2d 583, 585 (1981). We also have recognized that a new trial is not warranted "where the evidence is conflicting and the jury[,] could have decided either way." *Id.*

As recited above, the evidence adduced at trial showed that the plywood was installed properly and that the plywood had not warped or delaminated prior to the time of installation. On the other hand, appellant's expert testified that the trusses were not installed accurately and that the buckling which had occurred in the wood *could* be related directly to moisture absorption and improper installation. (N.T. 145–146). According to appellant, it's own expert testimony showed "at least probable explanations for the warping and delamination of the plywood." Brief for Appellant at 11. We must reject appellant's contentions.

This Court has held that the weight to be accorded expert testimony is a function for the trier of fact. *See Kuisis v. Baldwin-Lima-Hamilton Corporation*, 457 Pa. 321, 319 A.2d 914, 924 (1974). In the instant case, the trial court, the trier of fact, found in favor of the appellee "[d]espite some expert testimony introduced on behalf of Georgia-Pacific

Corporation".[4] Under these circumstances, we will not disturb the trial court's resolution of the matter because the evidence supports the conclusion of the finder of fact.

Judgment affirmed.

---

**4.** The case of *Lenkiewicz v. Lange*, 242 Pa.Super. 87, 363 A.2d 1172 (1976) is distinguishable. In *Lenkiewicz*, the appellant did not show that a defect existed at the time of sale which occurred four and one-half years prior to the accident, and appellant's own expert had no idea what caused the wall to collapse; *See also* Concurring Opinion by Hoffman, joined by Spaeth, J. By contrast, appellee's testimony rebutted the appellant's testimony and further established that only a short amount of time elapsed from the time of sale of the product until the defect became noticeable. We have said that a plaintiff may prove the existence of a defect circumstantially by showing that the product malfunctioned. *Id.*, 242 Pa.Superior at 91, 363 A.2d at 1175. (Cases omitted). In this case, the manufacturer of the plywood was held liable because the court discounted the credibility of its expert witness and accepted the version of appellee's testimony that the plywood was defective at the time of the sale, and that the defect caused appellee's harm.