## Silver v. Waco Scaffolding Co.

*Mark S. Fridkin,* for plaintiff.
*Lawrence M. Silverman,* for defendant.
*Timothy J. Galanaugh,* for defendant.

KLEIN, *J.,* August 7, 1992—Richard Silver was working as a glazier on a scaffold in March of 1985. The scaffold had been on the job for about two months and had been used by the iron workers and the glaziers. A hook that was part of the scaffolding above Silver fell to the ground. Silver ducked the falling hook, lost his balance, and fell from the scaffold, badly injuring his knee.

The hooks are on the end of the wooden planks and attach the planks to the framework. A co-worker had retrieved the hook and said it had a jagged edge. Subsequently, the hook was lost. The plank itself was not damaged.

The plaintiff's expert, Mr. Clauser, opined that the most likely cause of the hook's fracture was that it was bent when the scaffold fell at some point. He stated that

it should have been replaced, but instead it was straightened. Therefore, the hook had a weakness which caused it to fail later, even though it looked normal.

Mr. Clauser also said that he believed it was more likely to be in this condition when first installed on the job than to have been damaged in the two months it was on the job. He does not cite any scientific evidence to support this conclusion. Therefore, he is merely speculating. Speculation by an expert has no more probative value than speculation by a lay person.

All Mr. Clauser noted was that there was testimony that the scaffold in general looked "worn" and there was dirt rather than cement under the scaffold. However, the scaffold had been on the job for two months prior to the accident. Iron workers had been using the scaffold before the glaziers. There is no way to tell when the scaffold was dropped and the hook straightened, or who did it. While it could have happened prior to this job, it could just as easily have happened after the scaffold was supplied by Waco. There is no way to tell when it was weakened. On this issue, the expert did not add anything beyond what a lay witness could surmise.

Accordingly, there is no way that the plaintiff can show that it is more likely than not that the scaffold was bent and straightened before it was delivered to the job site rather than after it was placed on the job site. For this reason, the summary judgment motion was properly granted.

## INADEQUATE FACTUAL BASIS

*Circumstantial evidence that workers were careful with leased equipment while on construction site and that some of it was delivered in poor working condition does not comprise an adequate factual basis for expert opinion that equipment was defective when delivered by defendant Waco.*

An expert witness may render an opinion on any subject which is "so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average laymen." *Camp Construction Corp. v. Lumber Products Co.,* 311 Pa. Super. 381, 387, 457 A.2d 937, 940 (1983), quoting *Commonwealth ex rel. M.B. v. L.D.B.,* 295 Pa. Super. 1, 10-11, 440 A.2d 1192, 1197 (1982).

The issue of when the piece of scaffolding was dropped and straightened is not the type of complex issue that requires expert testimony given the available evidence. The expert bases his opinion that the hook's defect originated prior to delivery on testimony that the equipment delivered by WACO was often in poor working condition and the glaziers who used the equipment were careful not to damage it. Whether a hook was damaged before or after delivery is not a technical question. It is one of when a human act occurred. That issue is not beyond the ken of the average laymen.

Analyzing the testimony in this case does not require a scientific background in physical engineering or any special knowledge. Allowing an expert to render an opinion on a question where special knowledge is not required would unnecessarily mislead a jury. Where the opinion

of an expert goes to an ultimate issue of fact, it must be excluded where it would confuse, mislead or prejudice the jury. *Camp Construction Corp. v. Lumber Products Co.*, 311 Pa. Super. 381, 387, 457 A.2d 937, 940 (1983), quoting *Commonwealth ex rel. M.B. v. L.D.B.*, 195 Pa. Super 1, 10-11, 440 A.2d 1192, 1197 (1982). This is especially so where expert testimony is the sole or basic factor influencing the jury's decision on the ultimate fact issue. See *Bessemer Stores v. Reed Shaw Stenhouse*, 344 Pa. Super. 218, 496 A.2d 762 (1985).

Expert testimony is incompetent if it lacks an adequate basis in fact. The expert is only allowed to assume the truth of testimony already in evidence. *Hussey v. May Department Stores Inc.*, 238 Pa. Super. 431, 435, 357 A.2d 635, 637 (1976). While an expert's opinion need not be based on an absolute certainty, an opinion based on mere possibilities is not competent evidence. *Niggel v. Sears, Roebuck & Co.*, 219 Pa. Super. 353, 281 A.2d 718 (1971). This means that expert testimony cannot be based solely upon conjecture or surmise. An expert must do more than guess. His or her assumptions must be based upon such facts as the jury would be warranted in finding from the evidence. *Houston v. Canon Bowl Inc.*, 443 Pa. 383, 385, 278 A.2d 908, 910 (1971).

Even if the expert assumes the truth of all testimony in evidence, his opinion would still be a guess. The expert did not make a personal observation of the incident scaffolding or hook, because they were lost, nor did he visit the work site where the accident occurred. Thus, the expert bases his opinion on the testimony of site workers that some of the scaffolding was delivered in poor

condition, and that the workers were careful with it. This is not an adequate foundation for such an opinion; there is no scientific correlation between these statements and the time the hook was damaged.

In addition, there is no evidence on the history of the scaffolding or hook in question. No one knows how it was used or handled, or whether or not it had been dropped or damaged in any way. The foremen on the site admitted that accidents happen, and that scaffolding is "unintentionally" dropped. So it is possible that the hook was damaged at the site. There simply is no way to tell when and where the accident occurred based on the sketchy details.

## INSUFFICIENT PROOF

*Although (A) some scaffolding on the construction site was worn and (B) the surface under the scaffolding was dirt, this is not sufficient to prove that the hook was damaged before delivery to the job site.*

Plaintiff's expert concluded that the hook was damaged before it came to the job site, not during the two months on the site by the iron workers or glaziers using it. He primarily based his conclusion on two facts. First, there was some testimony that some of the scaffolding on the job site was worn. Second, the surface was dirt, making it somewhat less likely that the hook would bend.

It is significant that the product's history is impossible to document. The product was designed for commercial use on a construction site. The scaffolding was not purchased "new" but rented "used." In addition, there is no testimony on the hook's condition or its specific use

when it was delivered or anytime thereafter. No one person can account for what happened to the incident scaffolding at any time during the two months it was used on the construction site.

There is no way to eliminate the strong possibility that the hook was damaged on-site. The expert in this case contends that the loose dirt surface of the ground on this particular construction site made it less likely for a hook to be damaged when scaffolding fell. However, this argument does not eliminate the possibility of damage incurred from falls. A foreman admitted that scaffolding was unintentionally dropped at the site. Considering that the scaffolding was often four or five stories above ground, a drop from that height could cause damage upon impact regardless of whether the surface is dirt or concrete. In addition, one cannot ignore the fact that this is a construction site where numerous items including rocks or equipment may be strewn on the ground. Contact with these items upon impact or the iron from other scaffolding could likewise damage a hook.

It is true that under some circumstances, an expert can offer an opinion as to the timing of damage to a product. However, this is only when scientific evidence is available to narrow the possibilities.

A similar situation arose in *Kuisis v. Bald.-Lima-Hamilton Co.*, 457 Pa. 321, 319 A.2d 914 (1974). Kuisis was injured because of a defect in the brake locking mechanism of a crane that his employer had purchased 20 years before. The timing and origin of the defect were hotly contested. There were changes made to the brake mechanism. An expert based his opinion on a safety engineer's

examination of the brake locking mechanism two years after the accident. The safety engineer found no wear. In addition, there was a malfunction of the locking mechanism under different circumstances from this accident four years after the purchase. Justice Pomeroy said, "Viewed against the record as a whole, these slender evidentiary threads are not enough to lift this contention out of the realm of speculation." 457 Pa. at 335-336, 319 A.2d at 923.

*Swartz v. General Electric Co.,* 327 Pa. Super. 58, 474 A.2d 1172 (1984), provides an example of a situation where expert testimony can provide enough evidence for a jury to make a determination. The issue was whether defective wiring in a stove caused a fire. The homeowner left a pot of soup on the back burner of an electric range on low setting. While the homeowner was out, a fire started. The expert testified that the fire started in the stove, and was an electrical fire. He reached this conclusion based on the heat of the fire as adduced from melted copper, the type of materials used in the range, and other circumstances. Although defendant claimed that the fire could have started because the soup was left on, the owner testified that he had many times previously followed the same pattern of cooking soup by having the soup boil, lowering the dial control to simmer, and checking the water level before leaving to ensure the pot was at least half full.

The Superior Court reasoned that the expert testimony, based on sufficient circumstantial evidence had been presented for a jury to find that the fire was caused by a short circuit in the plug wire and to eliminate plaintiff's negligence in leaving the burner on. *Id.* at 69, 474 A.2d

at 1177. The limited use of the product to the homeowner made it possible to track the product's history thereby eliminating abnormal use which is an impossible feat where the product is leased on a construction site. In *Swartz*, the Superior Court also held that the expert could testify as to when the defect that caused the short circuit originated. The court reasoned that due to the complexity of electrical wiring few jurors would have sufficient knowledge to decide whether the condition which caused a short circuit to happen ten months after the range's purchase would be present at time of purchase. *Id.* at 71, 474 A.2d at 1178. Saying dirt is softer than cement is a far cry from this kind of expert testimony.

In *Lanza v. Poretti*, 537 F. Supp. 777, 785 (E.D. Pa. 1982), the federal court, using Pennsylvania law, held that the expert testimony would not help the trier of fact ascertain the cause of the fire. The expert testimony of a "cause and origin" fire investigator was that the fire was either caused by the "possibility of arson or possible careless disposal of cigarette materials." The court reasoned that without direct physical evidence of smoking or elimination of all other possible causes with reasonable certainty the expert's opinion was conjectural. Likewise, this case lacks direct physical evidence of when and how the hook was damaged making the opinion conjectural.

Due to the plaintiff's inability to pinpoint the timing of the defect without speculation, the summary judgment was properly granted.