**Nicholas CAVE, Appellee**

v.

**WAMPLER FOODS, INC., Pilgrim's Pride Corporation of Virginia, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued April 30, 2008.

Filed Nov. 12, 2008.

Reargument Denied Dec. 22, 2008.

---

Thomas E. Ullrich, Harrisburg, for appellants.

David S. Smacchi, Kingston, for appellee.

BEFORE: LALLY–GREEN, SHOGAN and COLVILLE *, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellants, Wampler Foods, Inc. and Pilgrim's Pride Corporation of Virginia, Inc., appeal from the judgment of August 21, 2007. We vacate and remand for a new trial.

¶ 2 The trial court recited the procedural history and found the following facts:

This is a products liability case in which a jury trial was conducted on October 30–31, 2006. [Appellee, Nicholas Cave] brought an action against [Appellants] based on strict liability seeking recovery for dental injuries sustained by [Cave] when he bit into hard material while eating a ground turkey product which had been manufactured, processed, marketed and sold by [Appellants]. The jury trial was conducted in accordance with Pa.R.C.P. No. 1311.1, wherein the parties agreed that the maximum amount of recoverable damages could not exceed $25,000.00. The jury returned a verdict in favor of [Cave] with total damages in the amount of $11,870.00.

Trial Court Opinion, 9/11/07, at 1.

¶ 3 The trial court denied Appellants' timely post-trial motion for JNOV and/or a new trial. This timely appeal followed. Appellants raise the following issues for our review:

 I. Whether the trial court abused its discretion by improperly excluding testimony regarding applicable federal, state and local regulations as well as poultry industry standards bearing on whether any defect existed in the allegedly defective product at the time such product left Pilgrim's Pride's processing plant?

 II. Whether the trial court abused its discretion by improperly excluding relevant and probative testimony as to the composition of the alleged offending particles or substance in the allegedly defective product which directly relates

---

* Retired Senior Judge assigned to the Superior Court.

to the ultimate determination as to whether the alleged offending product was defective?

III. Whether the trial court abused its discretion by denying Pilgrim's Pride's Motion in Limine to Exclude Hearsay portions of Plaintiff's treating physician's medical records on the grounds that the challenged portions constituted hearsay and would mislead and/or confuse the jury?

IV. Whether the trial court abused its discretion by excluding relevant, probative testimony and cross examination regarding Plaintiff's treating physician's criminal convictions for improperly compiling treatment notes, rendering unnecessary and improper treatment, and falsifying insurance documents?

V. Whether the trial court committed a controlling error of law or otherwise abused its discretion by failing to define what constitutes a "defect" by refusing to give Pilgrim's Pride's proposed points for charge numbers 15, 16, 17, 18, 23, and 25?

VI. Whether the trial court abused its discretion by granting Mr. Cave's motion for delay damages despite the fact that Mr. Cave caused the delay of the trial?

Appellants' Brief at 5.[1]

 ¶ 4 The trial court declined to award a new trial based on any of the alleged errors. We review the trial court's decision as follows:

We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If

the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

*Underwood v. Wind,* 954 A.2d 1199, 1206 (Pa.Super.2008).

 ¶ 5 Furthermore, we note at the outset that "[c]ourt control of jury action in products liability cases is more extensive than in an ordinary negligence action." *Schindler v. Sofamor, Inc.,* 774 A.2d 765, 771 (Pa.Super.2001), *appeal denied,* 567 Pa. 727, 786 A.2d 989 (Pa.2001). The *Schindler* Court wrote as follows:

In *Azzarello v. Black Bros. Co., Inc.,* [480 Pa. 547] 391 A.2d 1020, 1026 (1978), the Supreme Court held that it is a judicial function to decide whether, under the plaintiff's version of the facts, recovery would be justified; and only after this judicial determination is made is the cause submitted to the jury to determine whether the facts of the case support the averrants [sic] of the complaint. In products liability cases, § 402A of the Restatement (Second) of Torts has been adopted as the law of this Commonwealth, and to prevail, the plaintiff must prove (1) that the product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm.

*Id.* (citations omitted).

 ¶ 6 Appellants first challenge the trial court's refusal to admit evidence of

---

**1.** Appellants included these issues in a timely concise statement of matters complained of

on appeal. Pa.R.A.P.1925(b).

regulations and industry standards pertaining to the product in question. We review this issue according to the following standard:

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

*Stumpf v. Nye*, 950 A.2d 1032, 1036 (Pa.Super.2008). A party suffers prejudice where the trial court commits an error that could have affected the verdict. *Pulliam v. Fannie*, 850 A.2d 636 (Pa.Super.2004), *appeal denied*, 583 Pa. 696, 879 A.2d 783 (Pa.2005).

¶ 7 Cave correctly notes that Pennsylvania courts have previously rejected introduction of industry or government standards in evidence in strict liability actions. *Lewis v. Coffing Hoist Division, Duff–Norton Co., Inc.*, 515 Pa. 334, 528 A.2d 590 (1987); *Sheehan v. Cincinnati Shaper Co.*, 382 Pa.Super. 579, 555 A.2d 1352 (1989), *appeal denied*, 523 Pa. 633, 564 A.2d 1261 (Pa.1989); *Majdic v. Cincinnati Machine Co.*, 370 Pa.Super. 611, 537 A.2d 334 (1988), *appeal denied*, 520 Pa. 594, 552 A.2d 249 (Pa.1988). The rationale is that such evidence would "introduce the reasonableness of the manufacturer's conduct into an action which focuses, for public policy reasons, upon the existence of a defect." *Sheehan*, 555 A.2d at 1355. In a strict liability case, "[t]he liability of a manufacturer is measured solely by the characteristics of the product he has produced rather than his behavior, and, therefore, strict liability does not sound in negligence." *Lewis*, 528 A.2d at 593, *quoting Lenhardt v. Ford Motor Co.*, 102 Wash.2d 208, 683 P.2d 1097, 1100 (1984). A product is defective if it leaves "the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for its intended use." *Schindler*, 774 A.2d at 772.

¶ 8 In the instant matter, Appellants sought to introduce evidence that the Code of Federal Regulations sets forth a tolerance for a small amount of bone material in processed meat.[2] The proffered evidence is directly relevant to and probative of Cave's allegation that the product at issue was defective. Moreover, Appellants do not seek to prove, through admission of this evidence, that they exercised "all possible care." *Cf. Lewis*, 528 A.2d at 593. That is, the evidence does not pertain to Appellants' method of producing the ground turkey. The proffered evidence pertains solely to the characteristics of the end product, in accordance with *Lewis*. Evidence of this kind is relevant, though not conclusive, of whether a defect exists.

¶ 9 We do not go so far as to announce that the holdings in *Lewis* and its progeny do not apply in manufacturing defect cases, as Appellants suggest. We conclude only that, under the unique facts of this food products claim, the proffered evidence was relevant and admissible, and the

---

2. The provision provides that meat products labeled as "boneless" shall not contain more than 1% bone, by weight. 9 C.F.R. 381.117(d). Likewise, Appellants sought to introduce a study published in the Federal Register reflecting that small particles of bone are not considered a health hazard. We confine our analysis to the admissibility of these items, and express no opinion on the admissibility of evidence of any other government regulation or industry standard.

trial court misapplied the law in excluding it.

¶ 10 Appellants next argue that the trial court abused its discretion in precluding testimony of an official from Wampler Foods, Inc. to the effect that the substance that caused Cave's injury was not bone or cartilage from a turkey. As Appellants correctly point out, lay opinion testimony is admissible if it is "rationally based on the perception of the witness [and] helpful to a clear understanding of the witness' testimony or the determination of a fact in issue...." Pa.R.E. 701; *Camp Constr. Corp. v. Lumber Products Co.*, 311 Pa.Super. 381, 457 A.2d 937 (1983).

¶ 11 Cave and another plaintiff's witness both testified that the offending substance appeared to be cartilage or bone. N.T., 10/30/06–10/31/06, at 87, 135. We see no valid basis for admitting lay opinion testimony on behalf of the plaintiff and excluding lay opinion testimony from a defense witness on precisely the same issue. We conclude, therefore, that the trial court abused its discretion in this regard.

¶ 12 Appellants' next two arguments address the trial court's admission of records from Cave's treating physician. Both arguments center on the physician's credibility, inasmuch as he was incarcerated at the time of trial for falsifying records and performing unnecessary treatments. As we have noted, the parties tried this case pursuant to Pa.R.C.P. 1311.1, governing trial after an appeal from an award of arbitration. Pursuant to Rule 1311.1(a), the plaintiff may stipulate $25,000.00 as the maximum amount of recovery. The stipulation allows the plaintiff to offer certain documents into evidence without the need for witness testimony. Pa.R.C.P. 1311.1(b). An adverse party may, however, subpoena a witness whose testimony would otherwise be waived. Pa.R.C.P.

1311.1(c). The trial court concluded that Appellants should have subpoenaed the treating physician pursuant to Rule 1311.1(c) if they wanted to attack his credibility. Since we will remand this case for new trial, Appellants will have an opportunity to subpoena the physician to appear at trial. Appellants may then examine him in accordance with any and all applicable rules, including Pa.R.E. 609, governing a witness' prior crimes of dishonesty. Thus, we need not engage in further analysis of this issue.

¶ 13 Appellants next argue that the trial court committed reversible error in failing to provide the jury with adequate instructions as to the meaning of "defect." The trial court concluded that Appellants waived their objections to the jury charge. We have held that a party must make a timely, specific objection in order to preserve a challenge to the trial court's jury charge. *Faherty v. Gracias*, 874 A.2d 1239, 1249 (Pa.Super.2005). Appellants made detailed, contemporaneous objections to the trial court's rejection of certain points for charge. N.T., 10/30/06–10/31/06, at 301–306. Each of these proposed points pertained in some way to the definition of defect. Appellants' subsequent assertion in their post-trial motion that the trial court's jury charge failed to provide an adequate definition of defect was sufficient to preserve this issue for appellate review.

¶ 14 With regard to the merits, we have held that jury instructions must contain correct definitions of legal terms, and that incomplete jury instructions are grounds for a new trial. *Gorman v. Costello*, 929 A.2d 1208, 1213 (Pa.Super.2007). As we have noted, "[a] jury may find a defect where the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe

for its intended use." *Schindler*, 774 A.2d at 772. In a products liability case, the evidence will often provide the jury with a definition of defect pertinent to the product at issue. *See* Pennsylvania Suggested Standard Civil Jury Instructions, 8.01, subcommittee comment.

¶ 15 The record reflects that the trial court's instruction adheres to the Pennsylvania standard jury instruction for strict liability:

> The manufacturer of a product is liable for the injuries caused to the plaintiff by a defect in the product which existed when the product left the possession of the manufacturer. Such liability is imposed even if the manufacturer has taken all possible care in the preparation and sale of the product.

N.T., 10/30/06–10/31/06, at 237. The trial court further instructed the jury that the "plaintiff must eliminate any other causes which are fairly suggested by the evidence." *Id.* at 238. The trial court did not include the language set forth in *Schindler*, and we direct that the trial court do so on remand. We will not, however, direct the trial court to provide the proposed points for charge Appellants set forth in their brief. A charge that adheres to the standard suggested instruction and includes language similar to that set forth in *Schindler* will provide adequate guidance to the jury in this case.[3] The jury's task will be to determine whether the turkey was defective based on all of the evidence of record, including the evidence to be admitted pursuant to this Opinion. As the comment to standard instruction 8.01 makes clear, the evidence in a given case is most important in guiding a jury's decision as to whether a particular product is defective.

¶ 16 Each of the foregoing trial court errors diminished the jury's ability to determine whether Cave proved that the ground turkey was in a defective condition when it left Appellants' control. We cannot conclude that these errors were harmless or that they did not affect the jury's verdict. Thus, the trial court abused its discretion in declining to award a new trial. *Underwood.* In light of the foregoing, we vacate the judgment and remand for a new trial.[4]

¶ 17 Judgment vacated. Case remanded for new trial. Jurisdiction relinquished.

¶ 18 Judge Colville files a Dissenting Opinion.

### DISSENTING OPINION BY COLVILLE, J.:

¶ 1 I dissent.

¶ 2 Under their first issue, Appellants contend the trial court erred by prohibiting them from presenting evidence regarding federal guidelines and industry standards for the purpose of demonstrating that the ground turkey which allegedly injured Appellee was not defective when it left Appellants' control. It is well-established that industry customs and standards, as well as governmental regulations

---

**3.** Specifically, we note that a substantial change instruction is not necessary, inasmuch as the trial court instructed the jury that Cave must eliminate any other potential causes of his injury suggested by the evidence. The other products with which Cave mixed the ground turkey are properly considered other potential causes of injury, rather than substantial changes to the turkey itself. Substantial change instructions are common where the alleged defective product is a machine, but we are dubious as to their value in a food products claim. Food products are commonly mixed with other food products and prepared in various ways prior to consumption.

**4.** Since we are vacating the judgment, we will not address Appellants' argument regarding delay damages.

and standards, are inadmissible in strict liability cases. *See, e.g., Lewis v. Coffing Hoist Division, Duff–Norton Company, Inc.,* 515 Pa. 334, 528 A.2d 590 (1987) (holding that industry standards are inadmissible in strict liability actions); *Majdic v. Cincinnati Machine Co.,* 370 Pa.Super. 611, 537 A.2d 334 (1988) (holding the introduction of industry standards impermissible in strict liability actions); *Sheehan v. Cincinnati Shaper Company,* 382 Pa.Super. 579, 555 A.2d 1352 (1989) (holding that evidence regarding governmental regulations or standards is inadmissible in strict liability cases). Appellants assert that these rules of law do not apply in strict liability cases involving claims of manufacturing defects.

¶ 3 In my view, given Appellant's poorly supported argument,[5] that this matter is a strict liability case, and that this Court is bound by the above-cited caselaw, I conclude the trial court did not err by precluding Appellants from presenting evidence regarding industry and/or governmental regulations and standards. Moreover, I respectfully disagree with the Majority's determination that the regulations and standards Appellants sought to introduce into evidence are "directly relevant and probative of [Appellants'] allegation that the product at issue was defective." Majority Opinion at 869. The mere existence of industry and governmental standards with respect to ground turkey is not, as I see it, relevant to and probative of whether the ground turkey which allegedly injured Appellee was or was not defective.

¶ 4 As to Appellants' second issue, I agree with the Majority's conclusion that the trial court erred by disallowing Eric Patton to offer lay testimony as to whether he believed the material which caused Appellee's injuries was turkey bone. I, however, am of the opinion that this error was harmless.[6] In this regard, I note the following.

¶ 5 A short time after Patton testified, the court allowed Appellants' counsel to read to the jury Defendants' Exhibit No. 5, which is a report completed by a person named Barry Miller. The report discussed scientific testing administered to the material which caused Appellee's injuries. The report concluded that the material is not bone. N.T., 10/30–31/06, at 228–30.

¶ 6 At best, Patton was not permitted to testify that, based upon his examination of the material which caused Appellee's injuries, he is of the opinion that the material is not turkey bone. Given that Appellants were permitted to read to the jury a scientific report which concluded that the material is not bone, I am unable to discern how Appellants were harmed or prejudiced by the trial court's erroneous decision to preclude Patton from offering his lay testimony. I, therefore, conclude Appellants are due no relief under this issue.

¶ 7 Under their third issue, Appellants contend the trial court abused its discretion by denying their motion *in limine* wherein they requested that the court exclude portions of Appellee's dentist's rec-

---

**5.** The trial court determined that Appellants failed to support their position with citation to controlling caselaw. In their brief to this Court, Appellants fail to acknowledge, let alone refute, the trial court's determination. In their brief to this Court, Appellants again fail to offer persuasive, binding authority in support of their claim that the rules stated

above do not apply to manufacturing defect cases.

**6.** The trial court concluded that it did not error by disallowing Patton to offer his lay opinion. For reasons similar to those I offer below, the court also noted that Appellants were not prejudiced by the alleged error.

ords as inadmissible hearsay. Appellants consistently have complained that "the medical notes of Dr. Asgari, [Appellee's] primary dentist, state that [Appellee's] 'Chief Complaint' was 'I have a toothache b/c it is Broken [sic][.]'" Appellants' Brief at 27. Appellants' challenges revolve around their belief that this statement constitutes inadmissible hearsay. The trial court determined that this statement was admissible pursuant to Pennsylvania Rule of Evidence 803(4). I agree with the trial court.

¶ 8 "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. Rule 803 provides, in relevant part:

The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:

**(4) Statements for purposes of medical diagnosis or treatment.** A statement made for purposes of medical treatment, or medical diagnosis in contemplation of treatment, and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

Pa.R.E. 803(4).

¶ 9 To the extent that the complained-of statement constitutes hearsay, the statement was admissible pursuant to Pa.R.E. 803(4). Appellee's statement, as recorded by Dr. Asgari in his records, clearly was made "for purposes of medical treatment, or medical diagnosis in contemplation of treatment, and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment." Pa.R.E. 803(4). Appellants' claim under this issue, therefore, is meritless.

¶ 10 Under their fourth issue, Appellants assert that the trial court abused its discretion by excluding testimony regarding Dr. Asgari's criminal convictions. During the course of the cross-examination of Appellee, the following exchange took place at sidebar:

[Appellants' counsel]: There's one other thing, and I apologize to counsel and the [c]ourt, but I've wrestled with this and I believe that discretion is better served if I raise it now.

I intend to ask [Appellee] if he's aware of the fact that Dr. Asgari has been convicted of forty-two counts of felony for theft by unlawful taking and is serving two and a half to five years at Camp Hill and has lost his license.

[Appellee's counsel]: My response to that is that interjects an element of improper care in his trial and has no place in this trial. It's—number one, there's no relevance to what Dr. Asgari is doing now. What happened to him is not material to any issue to be determined by the jury, and it creates great prejudice to my client to think maybe somehow Dr. Asgari screwed this up.

The court: The objection is sustained.

[Appellants' counsel]: Your Honor, may I speak?

The court: I've heard enough on that.

N.T., 10/30–31/06, at 163–64.

¶ 11 The claim of error Appellants have preserved for the purpose of appellate re-

view is essentially two-fold.[7] Appellants argue that the dentist's criminal record was admissible as impeachment evidence pursuant to the Pennsylvania Rules of Evidence. Appellants further argue that "the [trial c]ourt admitted Dr. Asgari's medical records on the basis that, *inter alia,* Dr. Asgari's 'statements' contained within the medical records would be subject to cross-examination and impeachment." Appellants' Brief at 28 (citing to page 103a of the reproduced record). Thus, the argument goes, the court breached its assurance when it precluded Appellants from impeaching Dr. Asgari's statements with his criminal history.

¶ 12 As to Appellants' second argument, they misrepresent the record. In the portion of the certified record which corresponds to page 103a of the reproduced record, the trial court addressed why it denied Appellants' motion *in limine* wherein they sought to preclude the admission of portions of Dr. Asgari's records. As discussed above, Appellants sought to preclude as inadmissible hearsay a statement, attributed to Appellee, contained within Dr. Asgari's records. The trial court allowed this portion of the dentist's records to be admitted into evidence because Appellee's statement fit within the hearsay exclusion found at Pa.R.E. 803(4) and because "the declarant, namely, [Appellee], will be available to testify at trial and can be cross-examined." N.T., 10/30–31/06, at 6. Thus, the court stated that Appellee, not Dr. Asgari's statements, would be subject to cross-examination. I now will discuss Appellants' argument regarding the rules of evidence.

¶ 13 It is true that "[t]he credibility of any witness may be attacked by any party, including the party calling the witness." Pa.R.E. 607(a). Moreover, "[f]or the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or nolo contendere, shall be admitted if it involved dishonesty or false statement." Pa.R.E. 609(a). However, due to the manner in which this matter was tried, Dr. Asgari's credibility was not the proper target of attacks.

¶ 14 Appellee stipulated to this matter being tried pursuant to PA.R.C.P. 1311.1. This rule provides, in relevant part, as follows:

(a) The plaintiff may stipulate to $25,000.00 as the maximum amount of damages recoverable upon the trial of an appeal from the award of arbitrators. The stipulation shall be filed and served upon every other party at least thirty days from the date the appeal is first listed for trial.

(b) If the plaintiff has filed and served a stipulation as provided in subdivision (a), any party may offer at trial the documents set forth in Rule 1305(b)(1). The documents offered shall be admitted if the party offering them has provided written notice to every other party of the intention to offer the documents at trial at least twenty days from the date the appeal is first listed for trial. The written notice shall be accompanied by a copy of each document to be offered.

(c) A document which is received into evidence under subdivision (b) may be used for only those purposes which

7. In its opinion, the trial court determined that it properly excluded evidence of Dr. Asgari's criminal history due to this matter being tried pursuant to Pennsylvania Rule of Civil Procedure 1311.1. Appellants fail to acknowledge, let alone refute, the trial court's determination in this regard. As I will discuss more thoroughly below, I concur with the trial court's reasoning.

would be permissible if the person whose testimony is waived by this rule were present and testifying at the hearing. The court shall disregard any portion of a document so received that would be inadmissible if the person whose testimony is waived by this rule were testifying in person.

(d) **Any other party may subpoena the person whose testimony is waived by this rule to appear at or serve upon a party a notice to attend the trial and any adverse party may cross-examine the person as to the document as if the person were a witness for the party offering the document.** The party issuing the subpoena shall pay the reasonable fees and costs of the person subpoenaed to testify, including a reasonable expert witness fee if applicable. . . .

Pa.R.C.P. 1311.1 (emphasis added).

¶ 15 Here, Appellee properly offered Dr. Asgari's report into evidence. Pa.R.C.P. 1305(b)(1)(iii). Because the trial court received Dr. Asgari's report into evidence, the doctor's testimony was waived. Appellants, however, were permitted to require Dr. Asgari's attendance at trial and cross examine him as to his report "as if [he] were a witness for the party offering the document." Pa.R.C.P. 1311.1(d). Appellants failed to take advantage of this opportunity.

¶ 16 In short, none of the parties to this matter called Dr. Asgari as a witness; thus, his credibility was not an object vulnerable to attacks. *See* Pa.R.E. 607(a) ("The credibility of any **witness** may be attacked by any party, including the party calling the witness.") (emphasis added). For these reasons, I conclude Appellants' fourth issue warrants no relief.

¶ 17 Under their penultimate issue, Appellants contend that the trial court's jury instruction was erroneous because it failed to define what constitutes a defect. In its opinion, the trial court concluded that Appellants waived this issue:

> The [c]ourt's charge on strict liability can be found at T.R. pp. 236–38. The [c]ourt afforded the parties to submit "proposed points for charge" and [Appellants] did not make a submission in regard to the "definition of a 'defect' in a poultry product." Thereafter, prior to charging the jury, the [c]ourt conducted an informal charging conference during which it allowed discussion and argument as to the parties submissions which concluded with the [c]ourt indicating what would be included in its charge. Following its charge to the jury and after the jury began deliberations, the [c]ourt gave the parties an opportunity to formally preserve objections to the [c]ourt's charge. While [Appellants] at that time memorialized their objections with regard to the [c]ourt's rejection of proposed jury instructions nos. 15, 17, 17, 18, 23 and 25, [Appellants] at no time interposed an objection criticizing the [c]ourt's charge relative to "failure to define what constitutes a 'defect' in a poultry product." [Appellants'] inclusion of those grounds in its motion for post-trial relief (item 6) is insufficient to preserve the issue and [Appellants] have waived same for purposes of appeal.

Trial Court Opinion, 9/11/07, at 2.

¶ 18 While Appellants allege in their brief to this Court that they preserved the issue in question by lodging their objections to the trial court's refusal to give their proposed charges numbered 15, 16, 17, 18, 23, and 25, Appellants' post-trial motion failed to state the same. Instead, their motion required the trial court to guess exactly when and how they preserved the issue for purposes of post-trial relief. Given these circumstances, I would

defer to the trial court's waiver determination.

¶ 19 Under their final issue, Appellants challenge the amount of delay damages the trial court awarded to Appellee. Appellants call to our attention that, in May of 2003, The Penn Traffic Company filed for bankruptcy in the federal courts, resulting in an automatic stay of the matter *sub judice*.[8] Appellants further point out that the bankruptcy court lifted the stay on November 2, 2004. Appellants complain that Appellee waited until June 8, 2005, to file in the trial court his motion to lift the bankruptcy stay. The trial court granted this motion on June 27, 2005. In short, Appellants insist that Appellee was responsible for the delay that occurred between May of 2003, and June 27, 2005; thus, according to Appellants, the trial court erred by awarding Appellee delay damages for this period of time.

¶ 20 In my view, Appellants have failed to adequately support their primary contention under this issue. Appellants contend that Appellee "was responsible for filing motions to lift the bankruptcy stay, and unreasonably delayed in doing so."

Appellants' Brief at 45. Appellants, however, fail to cite to any authority for these propositions. At one point, Appellants do cite to *Gunn v. Grossman,* 748 A.2d 1235 (Pa.Super.2000), which arguably has some relevance to this case. Appellants, however, fail to offer any discussion as to how *Gunn* relates to this matter.[9] *See* Pa. R.A.P. 2119(b) ("Citations of authorities must set forth the principle for which they are cited."). Appellants' argument under this issue amounts to little more than a bald assertion. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, **followed by such discussion and citation of authorities as are deemed pertinent.**") (emphasis added).[10] Consequently, I do not believe this issue warrants further consideration.

¶ 21 For all of these reasons, I would affirm the judgment.

---

8. The Penn Traffic Company was a defendant in this case. By the time the case went to trial, Appellants were the only remaining defendants.

9. Moreover, as Appellee suggests, *Gunn* is distinguishable from this matter. In *Gunn,* the trial court excluded from delay damages certain time periods, including a period of time during which the appellants' insurer, *i.e.,* the defendants' insurer, was insolvent. One appellant claimed the trial court erred by assessing delay damages against him. This Court determined that the award of delay damages was appropriate. Thus, in clear contrast to circumstances presented in this case, "in *Gunn,* we were reviewing an argument that the trial court erred in awarding delay damages at all, not whether it properly excluded (or included) a period during which a party had filed for bankruptcy. Moreover,

the bankrupt party in *Gunn* was Physicians Insurance Company which insured the defendants, not any of the defendants themselves." *Sopko v. Murray,* 947 A.2d 1256, 1259 (Pa.Super.2008).

10. As an aside, in *Sopko, supra,* the Court concluded that "we did not hold in *Babich* [v. *Pittsburgh & New England Trucking Co.,* 386 Pa.Super. 482, 563 A.2d 168 (Pa.Super.1989)] that any period of time during which a plaintiff fails to obtain relief from an automatic stay in a bankruptcy proceeding must be excluded from any delay damage computation." *Sopko,* 947 A.2d at 1260. Moreover, we declined to create such a rule in *Sopko.* Instead, we determined that "[t]he critical question is whether [the a]ppellant has established that [the a]ppellees 'caused delay of the trial.'" *Id.* (quoting Pa.R.C.P. 238(b)(1)(ii)).