J-A22022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| NICOLE MARIE GOLDBACH | |
| Appellant | No. 96 MDA 2016 |

Appeal from the Judgment of Sentence December 16, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0002154-2015

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                    **FILED OCTOBER 17, 2016**

Appellant, Nicole Marie Goldbach, appeals from the judgment of sentence entered by the Honorable Donald R. Totaro, Court of Common Pleas of Lancaster County. Goldbach contends that the Commonwealth violated her right against unlawful search and seizure. After careful review, we affirm.

At approximately 2:45 a.m. on December 24, 2014, the Lancaster County emergency dispatch call center received the following telephone call:

> My name is Terry. I'm the manager at the Sheetz in Millersville. I was just leaving my shift and saw a lady passed out in a car, and now she is inside the store ordering food. I didn't - - I just didn't know if the police officer wants to swing by and keep an eye on her. She's driving a Volkswagen Beetle with a tan roof. I saw her get out of the car. She stumbled.

N.T., Suppression Hearing, 12/16/15, at 7. Based upon that telephone call, the dispatch call center alerted Sergeant Brian Tatara with the following information:

> Can you go out to the Sheetz? Caller is the manager, observed a female sleeping in a yellow Beetle, which is parked out front. It's a ragtop. She got out, stumbled inside the store, where she is now. Not sure if she's 37 or having medical issues. White female, blonde hair, light green sweatshirt and jeans.

*Id*., at 6-7. Sergeant Tatara immediately proceeded to the Sheetz, where he observed the described yellow Volkswagen Beetle, driven by Goldbach, leaving the parking lot. Sergeant Tatara followed the vehicle for approximately one minute and initiated a traffic stop for suspicion of Driving under the Influence ("DUI"). Goldbach was charged with one count of DUI: Highest Rate of Alcohol, and one count of DUI: General Impairment/Incapability of Driving Safely.[1]

Goldbach moved to suppress evidence gained during the traffic stop. The court held a suppression hearing. Sergeant Tatara testified that "37" is code for an intoxicated person, and that in his 16 years of experience, he noted that gas stations were generally known locations for intoxicated travelers late at night. Following the hearing, the suppression count denied Goldbach's motion to suppress. The parties proceeded to a stipulated bench trial, wherein the trial court found Goldbach guilty on both counts. This timely appeal followed.

---

[1] 75 Pa. C.S.A. § 3802(c) and (a), respectively.

On appeal, Goldbach challenges the suppression court's denial of her motion to suppress. She contends that Sergeant Tatara did not have reasonable suspicion to perform the underlying traffic stop, and that therefore all evidence obtained as a result of the traffic stop should be excluded as fruit of the poisonous tree. **See** Appellant's Brief, at 7. We disagree.

Our scope and standard of review in considering the trial court's denial of a motion to suppress is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted [sic] when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

**Commonwealth v. Jones**, 121 A.3d 524, 526-527 (Pa. Super. 2015) (citation omitted). "Further, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." **Commonwealth v. Houck**, 102 A.3d 443, 455 (Pa. Super. 2014) (citations omitted).

The suppression court's factual findings are supported by the record. Therefore, we proceed to examine the trial court's application of the relevant law to the facts at hand.

The Fourth Amendment of the United States Constitution guarantees, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…" U.S. Const. amend. IV. Similarly, the Pennsylvania Constitution assures citizens of our Commonwealth that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures…." Pa. Const. art. I, § 8. Further, "[t]he reasonableness of a government intrusion varies with the degree of privacy legitimately expected and the nature of the governmental intrusion." **Commonwealth v. Fleet**, 114 A.3d 840, 844 (Pa. Super. 2015) (citation omitted).

Here, both parties agree that Sergeant Tatara placed Goldbach under investigative detention when he performed the traffic stop. "[A]n "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest." **Id**., at 845 (citation omitted).

Goldbach's sole issue on appeal is whether Sergeant Tatara had reasonable suspicion or probable cause that criminal acts or violations of the Motor Vehicle Code had been committed to justify the investigatory traffic stop. **See** Appellant's Brief, at 7. Goldbach contends that the non-specific information provided by the Sheetz manager was insufficient to form reasonable suspicion because it only *implied* Goldbach may have been

intoxicated, and Sergeant Tatara's subsequent observations did not bolster this implication. *See id*., at 6.

A police officer is permitted to perform an investigative stop of a vehicle upon reasonable suspicion of criminal activity or a Vehicle Code violation. *See* 75 Pa.C.S.A. § 6308(b). In determining whether a police officer has sufficient reasonable suspicion to perform an investigatory traffic stop, this Court has summarized the requirements as follows:

> Reasonable suspicion is a less stringent standard than [the] probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by the police and its degree of reliability in the totality of the circumstances. In order to justify a seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must afford due weight to the specific reasonable inferences drawn from the facts in light of the officer's experience[,] and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010) (citations omitted). Further,

> [t]o have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including "tips" from citizens. Naturally, if a tip has a relatively low degree of reliability more information will be required to establish the requisite quantum of suspicion….
>
> …
>
> However, a tip from a known informer may carry enough indicia of reliability for the police to conduct an investigative stop, even though the same tip from an anonymous informant would likely not have done so. Indeed a known informant places himself at

risk of prosecution for filing a false claim if the tip is untrue, whereas [an] unknown informant faces no such risk.

***Commonwealth v. Lohr***, 715 A.2d 459, 461-462 (Pa. Super. 1998) (citations and internal quotation marks omitted). When third party observations provide the basis for a police officer's reasonable suspicion, a suppression court must examine the "informant's reliability, veracity, and basis of knowledge, as well as whether the information supplied to the police contained 'specific and articulable facts' that would lead the police to believe that criminal activity may be afoot." ***Commonwealth v. Albert***, 767 A.2d 549, 552 (Pa. Super. 2001) (citations omitted).

Here, the information provided to Sergeant Tatara by Lancaster County dispatch was provided by an identified source, Terry Frey, the manager of the Millersville Sheetz gas station. Frey reported that Goldbach was "passed-out" in her vehicle and "stumbled" into the gas station. Frey requested that police officers respond to "keep an eye on her." While Frey did not specifically state that he believed that Goldbach was intoxicated, it is obvious that Frey inferred his suspicion that Goldbach was intoxicated. Contrary to Goldbach's assertions, we find that Frey's observations were sufficiently specific and reliable for Sergeant Tatara to form reasonable suspicion of intoxication. ***See Commonwealth v. Korenkiewicz***, 743 A.2d 958, 964 (Pa. Super. 1999) ("Established Pennsylvania law generally accepts that intoxication is a condition within the understanding or powers of observation of ordinary citizens.")

Additionally, Sergeant Tatara testified that he had been a police officer for sixteen years and had participated in hundreds of DUI investigations. Based upon the information relayed to Sergeant Tatara from Lancaster County dispatch, Sergeant Tatara drew upon his experience, as well as his knowledge that intoxicated persons frequent the Sheetz gas station at 2:30 a.m., to conclude that Goldbach may be intoxicated. Sergeant Tatara received this information *via* the dispatch center, and spotted the described vehicle in the gas station's parking lot within minutes of Frey's initial telephone call. Because the information about Goldbach's alleged intoxication came from a known caller, there is no requirement that Sergeant Tatara independently observe signs of intoxication before forming reasonable suspicion. Under the totality of the circumstances, Sergeant Tatara's investigatory detention of Goldbach was supported by reasonable suspicion. Therefore, we find that Goldbach's argument to the contrary is meritless.

Judgement of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2016