J-S07027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZACKARY N. JOHNSTON | : | |
| | : | |
| Appellant | : | No. 311 WDA 2021 |

Appeal from the Judgment of Sentence Entered February 2, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0008795-2019

BEFORE:   OLSON, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                 **FILED: APRIL 29, 2022**

Zackary N. Johnston appeals from the judgment of sentence imposed following his conviction of persons not to possess, firearms not to be carried without a license, and resisting arrest.[1]  We affirm.

On August 3, 2019, Stowe Township police received a call regarding a disturbance outside a bar involving a verbal argument between a black female and a white male with a gun.  An officer responded to the area and located two individuals who matched the description provided in the police dispatch.  The officer stopped the couple and conducted a pat-down search of the male, Johnston, which revealed a firearm.  Police arrested Johnston and charged him with numerous offenses.  He filed a motion to suppress the firearm and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **_See_** 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 5104.

the trial court scheduled a hearing.  The trial court summarized the testimony

presented at the suppression hearing, as follows:

> [T]he Commonwealth presented the testimony of Officer David English of the Stowe Township Police Department who testified that on August 3, 2019 he received a dispatch at approximately 9:30 pm which reported a white male wearing a black t-shirt and jeans, arguing with a black female in the area of a bar in Stowe Township.  Officer English testified that the bar, located under the McKees Rocks Bridge on Island Street, was a location where he had calls for numerous fights and arguments, and where he had made previous arrests.  The caller, whose identity [and phone number] was shown on Officer English's computer screen, also stated that the male had a firearm in either his waistband or in a fanny pack or backpack.  The caller also indicated that the male and female had walked away from the area of the bar [on to the Island Street area].  Officer English proceeded to Island Street when he saw a male and female fitting the description given by the caller.  When he observed them he saw the female lying on the ground [in the middle of the street] with the male, later identified as [Johnston], standing over her which led him to believe that there was some type of "domestic" going on.  As Officer English, who was alone at that time, approached [Johnston and his companion,] the female got up from the ground and started to walk away.  [Officer English "asked them to stop, asked them what was going on, and if they were all right."]  Officer English [observed signs of intoxication, including a little bit of staggering, and] also noted an odor of alcohol [when he got close to them].  At that time Officer English testified that he detained [Johnston] because he fit the description of the male with a possible firearm, placed him in handcuffs and conducted a pat down and found the firearm in his waistband.  Upon consideration of the totality of the circumstances the motion to suppress was denied . . ..

Trial Court Opinion, 6/10/21, at 2-3 (citations to the record omitted).

In November 2020, the matter proceeded to a non-jury trial at the

conclusion of which the trial court found Johnston guilty of the above-

referenced offenses.  On February 2, 2021, the trial court sentenced him to

an aggregate prison term of four and one-half years to nine years, followed by three years of probation. Johnston filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Johnston raises the following issues for our review:

1. Whether the police seized . . . Johnston without reasonable suspicion to believe that he was engaged in criminal activity, in violation of his federal and state constitutional rights against unreasonable searches and seizures?

2. Whether the police searched . . . Johnston without reasonable suspicion to believe that he was armed and dangerous, in violation of his federal and state constitutional rights against unreasonable searches and seizures?

Johnston's Brief at 6.

Johnston's issues present a challenge to the suppression court's rulings. On appeal from the denial of a suppression motion:

Our standard of review . . . is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Galendez*, 27 A.3d 1042, 1045 (Pa. Super. 2011) (*en banc*) (citation omitted). When examining a ruling on a pretrial motion to suppress, appellate courts are limited to reviewing only the evidence presented at the suppression hearing. *See Commonwealth v. Bush*, 166 A.3d 1278, 1281-82 (Pa. Super. 2017).

- 3 -

In evaluating Johnston's first issue, we are mindful that in order to secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty. *See Commonwealth v. Reppert*, 814 A.2d 1196, 1201 (Pa. Super. 2002) (*en banc*). For this purpose, courts in Pennsylvania have defined three types of police interaction: a mere encounter, an investigative detention, and a custodial detention.

In the instant matter, it is undisputed that an investigative detention commenced when Officer English ordered Johnston and his female companion to stop.[2] An investigatory detention is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inferences derived from those facts, give rise to a reasonable suspicion of criminal activity, and therefore warrant the intrusion. *See Commonwealth v. Hall*, 735 A.2d 654, 659 (Pa. 1999). In determining whether the detaining officer had reasonable suspicion, we employ the following standard:

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing

---

[2] As the trial court and the Commonwealth concede that a seizure occurred, we need not address Johnston's arguments on that issue.

court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Goldsborough***, 31 A.3d 299, 306 (Pa. Super. 2011).

Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. ***See Commonwealth v. Brown***, 996 A.2d 473 477 (Pa. 2010). In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention. ***Id***.

In assessing whether there is reasonable suspicion to detain an individual, police officers need not personally observe the individual engaging in criminal or suspicious behavior, but may also rely on information provided by third parties, including tips from citizens. ***See Commonwealth v. Walker***, 501 A.2d 1143, 1148 (Pa. Super. 1985) (explaining that police may rely solely upon facts and information supplied by another person so long as there is a substantial basis for trusting the source and credibility of the information). In the absence of special circumstances, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces

no such risk. *See Commonwealth v. George*, 878 A.2d 881, 884 (Pa. Super. 2005). When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. *See Commonwealth v. Korenkiewicz*, 743 A.2d 958, 964 (Pa. Super 1999) (*en banc*). The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. *Id*. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis. *Id*. Moreover, a tip from an informer known to police may carry enough indicia of reliability for the police to conduct an investigative stop, even though the same tip from an anonymous informant would likely not have done so. *See Commonwealth v. Lohr*, 715 A.2d 459, 462 (Pa. Super. 1998).

Johnston argues that when Officer English ordered him and his female companion to stop, the officer did not have reasonable suspicion that criminality was afoot to justify an investigative detention. Johnston claims that the suppression record is silent as to the amount of time that elapsed between Officer English's receipt of the 911 dispatch and his arrival at the scene. Johnston further claims that Officer English "provided nothing more than an overly vague, generic description of the individuals' clothing," and "never testified that Johnston was wearing a fanny pack or backpack, or that he saw anything resembling a gun on . . . Johnston's person." Johnston's Brief at 27-28. Johnston maintains that, because the suppression record is silent

as to what he and his female companion were wearing, "it was impossible for the trial court to objectively determine whether or not Officer English acted reasonably in stopping . . . Johnston and his friend." *Id*. at 26. While Johnston concedes that the individual who called 911 was identified, he points out that Officer English did not personally speak to that individual. Johnston claims that Officer English did not have the specific and articulable facts needed to establish reasonable suspicion, and that he acted on nothing more than an unparticularized hunch that Johnston was engaged in criminal activity.

The trial court considered Johnston's first issue and determined that it lacked merit. The court reasoned:

> In this case, Office English received a dispatch indicating that a verbal argument was observed between a man and a woman and that the man had a gun in his possession. It is clear that Officer English was justified in responding to the call and proceeding to the scene to further investigate. When he located the man and woman, who matched the description given in the dispatch, he observed the man standing over the female who was lying on the ground in the middle of the street. Even assuming the call may have come from an anonymous tip, as there was no specific testimony concerning the identity of the caller, Officer English made . . . personal observations that established a reasonable suspicion, given the totality of the circumstances and based on reasonable inferences therefrom, that criminal activity may be afoot, that is, that there was a "domestic violence" incident in progress and that a firearm may be involved.

Trial Court Opinion, 6/10/21, at 4.

Our review of the suppression record does not support the trial court's finding that Officer English relied on an anonymous tip. Officer English testified that the caller's name and phone number were made known to the

911 dispatcher and appeared on Officer English's computer screen. *See* N.T., 8/17/20, at 4. The fact that the officer did not disclose the name of the caller at the suppression hearing does not negate the fact that, by identifying himself or herself to police when reporting the disturbance, the caller risked criminal prosecution for providing false information. *See George*, 878 A.2d at 884; *see also Lohr*, 715 A.2d at 462. Thus, the caller was not anonymous.

Moreover, as the caller's identity and phone number were made known to police, a degree of reliability attached to the information that he or she provided. *See Commonwealth v. Hayward*, 756 A.2d 23, 34 (Pa. Super. 2000). Thus, if Officer English was able to corroborate information provided by the identified caller, the totality of the circumstances could give rise to a reasonable suspicion sufficient to warrant an investigative detention. *Commonwealth v. Brown*, 996 A.2d 473, 479 (Pa. 2010) (holding that information provided by an identified caller regarding imminent criminal activity to be committed by a specific person at a particular time and place, when corroborated by police investigation, gave rise to reasonable suspicion); *see also Commonwealth v. Butler*, 194 A.3d 145, 149 (Pa. Super. 2018); *Commonwealth v. Shine*, 784 A.2d 167, 171 (Pa. Super. 2001) (holding that an officer's independent observations that an individual was involved in or would be imminently involved in the commission of a crime, provided reasonable suspicion to conduct an investigative detention). The corroboration requirement is based on the principle that because an informant

is right about some facts, he or she is probably right about other facts, including the allegation that the object of the tip is engaged in criminal activity. ***See Commonwealth v. Jackson***, 698 A.2d 571, 574 (Pa. 1997).

Here, the suppression record reflects that the information provided by the identified caller was that, at approximately 9:30 p.m., a white male and black female were engaged in a verbal argument near a bar located under the McKees Rocks Bridge, and that the male had a gun "either in the waistband, fanny-pack or backpack." ***See*** N.T., 8/17/20, at 5. The caller described the male as white and wearing a black t-shirt, jeans, and having little hair. ***Id***. at 3. Officer English testified that he was familiar with the bar, there were frequent fights, arguments, and accidents in the area, and that he had made several arrests in the area. ***Id***. at 4. Officer English proceeded to the location of the bar and did not see any individuals matching the description provided by the caller. ***Id***. at 5. However, because the caller indicated that the couple had walked away from the bar on Island Street, the officer proceeded down Island Street where he saw a couple matching the description provided by the caller. ***Id***. The officer also testified that the female was lying on the ground in the middle of the street and the male was standing over the top of her. ***Id***. at 5, 8. Based on the information that had been provided by the identified caller as well as his own observations, Officer English believed that a domestic situation was occurring. ***Id***. at 5-6.

Our review of the suppression record reflects that, before effectuating

the investigative detention, Officer English conducted his own investigation which revealed a couple matching the description provided by the caller in the specific location indicated by the caller. Thus, Officer English corroborated certain readily observable facts provided by the identified caller. The record further indicates that the officer independently viewed unusual and suspicious conduct in that the female was lying in the middle of the street with the male standing over her. Accordingly, the totality of the information available to Officer English provided him with reasonable suspicion that criminality in the nature of domestic violence may be afoot, sufficient to briefly detain the couple in order to further investigate the matter. *See Commonwealth v. Fitzpatrick*, 666 A. 2d 323, 325 (Pa. Super. 1995) (holding that a police officer may briefly detain a citizen for investigatory purposes if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot). As the suppression record supports the trial court's determination that Officer English acted with reasonable suspicion when ordering Johnston and his companion to stop, his first issue merits no relief.

In his second issue, Johnston challenges Officer English's search of his person incident to the investigative detention. A police officer is entitled to conduct a limited search of an individual to detect weapons if the officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that criminal activity is afoot, and that the

person may be armed and dangerous. ***See Terry v. Ohio***, 392 U.S. 1, 30 (1968). Review of an officer's decision to frisk for weapons requires balancing two legitimate interests: that of the citizen to be free from unreasonable searches and seizures; and that of the officer to be secure in his personal safety and to prevent harm to others. ***See Commonwealth v. Zhahir***, 751 A.2d 1153, 1158 (Pa. 2000). To conduct a limited search for concealed weapons, an officer must possess a justified belief that the individual, whose suspicious behavior he is investigating at close range, is armed and presently dangerous to the officer or to others. ***Id***. (citing ***Terry***, 392 U.S. at 24). In assessing the reasonableness of the officer's decision to frisk, we do not consider his or her unparticularized suspicion or hunch; rather, we consider the specific reasonable inferences which the officer is entitled to draw from the facts in light of his or her experience. ***Id***.

Johnston contends that Officer English lacked reasonable suspicion to believe that Johnston was presently armed and dangerous so as to conduct a pat-down for weapons. Johnston claims that the officer did not provide specific and articulable facts to support a protective frisk and acted on nothing more than an unparticularized hunch that Johnston was in possession of a firearm. Johnston asserts that the identified caller merely indicated that a gun "may" be involved, and that the trial court found that it was not definitely known whether a gun was involved in the alleged domestic incident. Johnston's Brief at 31, 33. Johnston points out that Officer English did not

testify that he observed a heavy bulge or the outline of a gun on Johnston's person, or that Johnston seemed nervous. Johnston argues that, based on the totality of the Commonwealth's suppression evidence, Officer English did not articulate the specific and articulable facts needed to conduct a protective frisk of Johnston.

In **Commonwealth v. Lagana**, 537 A.2d 1351 (Pa. 1988), our Supreme Court considered a similar challenge to a protective frisk prompted by a police radio call. In that case, the police radio call contained information from an unidentified source that there was a white male, twenty to twenty-five years of age, wearing a yellow raincoat, in possession of a gun on a specific corner in Philadelphia. A police officer arrived at the location and observed a man fitting that description who was looking through binoculars into a nearby business establishment. The officer exited his vehicle, approached the defendant, immediately frisked him, and found a revolver in the waistband of his pants. The defendant was arrested for illegal possession of a firearm. The trial court granted suppression of the firearm, and this Court affirmed that ruling. Our Supreme Court reversed, holding that the officer had reason to believe that the individual was armed and dangerous because he was suspected of possessing a weapon and the police observed a man fitting the description who was casing a business establishment with a pair of binoculars, suggesting that he was engaged in criminal activity. Specifically, our Supreme Court ruled that "[t]his suspicious conduct under the

circumstances, taken as a whole, suggested that [the individual] was involved in criminal activity **and was the person with the gun who the officer was seeking**." **Id**. at 1354 (emphasis added).

In the present case, Officer English unequivocally indicated that the caller, who was identified rather than unidentified, "stated the male was seen arguing with the female and **the male had a firearm** . . .." N.T., 8/17/20, at 5 (emphasis added). Moreover, other information provided by the identified caller was corroborated by Officer English when he observed a couple matching the physical description provided in the precise location indicated by the caller. The officer thereafter independently observed unusual and suspicious conduct in that the female was lying in the street and the male was standing over the top of her. The information provided by the caller, when considered with the suspicious behavior observed by the officer of a couple that matched the description provided, suggested the male whom Officer English observed was involved in criminal activity and was the male with a gun whom the officer was seeking. **See Lagana**, 537 A.2d at 1354. Accordingly, under the totality of the circumstances, Officer English could reasonably believe that the male, whose suspicious behavior he was investigating at close range, was armed and presently dangerous to the officer or to others. As the suppression record supports the trial court's determination that Officer English was justified in conducting a limited search of Johnston to detect weapons, his second issue warrants no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/29/2022