J. S12035/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | IN THE SUPERIOR COURT OF |
| J.S.Z., A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: | : | No. 1673 MDA 2017 |
| COMMONWEALTH OF PENNSYLVANIA | : | |

Appeal from the Order Entered October 12, 2017,
in the Court of Common Pleas of Lycoming County
Criminal Division at No. CP-41-JV-0000195-2017

BEFORE:  LAZARUS, J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　**FILED SEPTEMBER 04, 2018**

This case returns to us from the Court of Common Pleas of Lycoming County.  The Commonwealth filed its concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) *nunc pro tunc*, and the trial court filed a supplemental opinion pursuant to Pa.R.A.P. 1925(a), in which it incorporated the contents of its October 12, 2017 order.  We shall now consider the Commonwealth's appeal of the trial court's October 12, 2017 order granting appellee's motion to suppress on its merits.[1]  After careful

---

[1] The Commonwealth may appeal an interlocutory order suppressing evidence when it provides a certification with its notice of appeal that the order terminates or substantially handicaps the prosecution.  **Commonwealth v. Whitlock**, 69 A.3d 635, 636 n.2 (Pa.Super. 2013), citing Pa.R.A.P. 311(d).  In **Commonwealth v. Gordon**, 673 A.2d 866, 869 (Pa. 1996), our supreme court held that the Commonwealth may appeal the grant of a defense motion *in limine* that excludes Commonwealth evidence and has the effect of substantially handicapping the prosecution.  As the trial court ruling excludes Commonwealth evidence, and the Commonwealth has certified that the effect of the ruling substantially handicaps the prosecution, we find that this appeal is properly before this court.

review, we reverse the trial court's October 12, 2017 order and remand for further proceedings.

The trial court summarized the factual and procedural history as follows:

> On July 25, 2017, a Petition alleging Delinquency was filed charging [J.S.Z. ("appellee")] with one count of Driving Under the Influence pursuant to 75 Pa.C.S. §3802 and one count of Purchase, Consumption, Possession or Transportation of Alcohol pursuant to 18 Pa.C.S. §6308. These allegations stem from an incident on June 6, 2017, at approximately 7:15 p.m., at which time Patrolman Tyler Bierly [("Officer Bierly")] of the Tiadaghton Valley Regional Police Department was investigating a harassment case involving a group of juveniles who had driven past the alleged victim several times shouting obscenities and giving her the finger. It was alleged that [appellee] . . . was driving the vehicle, and another juvenile[, B.G.,] who was in the front passenger seat[,] was the individual who was actually committing the alleged acts of harassment. There were no observations or allegations that [appellee] . . . was participating in any acts of harassment.
>
> Shortly after speaking with the alleged victim and witnesses, Officer Bierly spotted a vehicle which matched the description provided by the victim. Officer Bierly performed a traffic stop on the vehicle on Allegheny Street in Jersey Shore. According to Officer Bierly's Affidavit of Probable Cause and his testimony, he approached the passenger side of the vehicle and made contact with [B.G.,] who [was] alleged to have been shouting obscenities and making obscene gestures. At this time, Officer Bierly testified that he smelled a strong odor of burnt marijuana coming from inside the car. According to the Incident Report, at this time the Officer made contact with [appellee] and again detected an odor of burnt marijuana. Officer Bierly asked [appellee] to step out of the vehicle and attempted to perform the Lack of Convergence test but was unable to complete it because the other juveniles in the vehicle were being

disruptive and required attention. All four juveniles were eventually removed from the vehicle and a search of the vehicle yielded an almost full bottle of Fireball Cinnamon Whiskey under the front passenger seat.

[Appellee] was transported to Jersey Shore Hospital by Officer Bierly and was read the DL-26 Chemical Test warnings. According to the Officer's incident report, [appellee] at that time did admit to smoking marijuana the previous day and consented to a blood draw, after which [appellee] was taken back to police headquarters. [Appellee] was read his **Miranda**[2] rights and, after refusing to speak to Officer Bierly without a lawyer present, was released to his father. The toxicology report from the lab indicated that [appellee] had reportable amounts of Amphetamine (likely from his ADHD medication), 11-Hydroxy Delta-9 THC, an active metabolite of THC, Delta-9 Carboxy THC, an inactive metabolite of THC, and Delta-9 THC, the active ingredient in marijuana. As a result of the traffic stop, [appellee] was charged with one count of Driving Under the Influence pursuant to 75 Pa.C.S. §3802 and one count of Purchase, Consumption, Possession or Transportation of Alcohol pursuant to 18 Pa.C.S. § 6308.

. . . .

[Appellee's] Motion to Suppress avers that the police did not assert that they observed [appellee] who was the operator of the vehicle, commit any violation of the vehicle code nor did they articulate reasonable suspicion that [appellee] was engaged in criminal activity. As a result, [appellee] requests that the evidence obtained from the vehicle stop be suppressed.

Trial court order and opinion, 10/12/17 at 1-4.

---

[2] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

The trial court granted appellee's suppression motion on October 12, 2017, on the grounds that the Commonwealth did not establish by a preponderance of the evidence "that the evidence seized from [appellee's] person and vehicle was legally obtained." (*Id.* at 5.) The Commonwealth filed a notice of appeal to this court on October 26, 2017. On October 27, 2017, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

The Commonwealth failed to timely file its Rule 1925(b) statement. On May 25, 2018, we remanded this case for the Commonwealth to file its Rule 1925(b) statement *nunc pro tunc*. The Commonwealth filed its Rule 1925(b) statement on May 30, 2018. The trial court then filed a supplemental opinion pursuant to Pa.R.A.P. 1925(a) on May 31, 2018.

The Commonwealth raises the following issue on appeal: "Whether the trial court abused its discretion when it held that the vehicle in question was stopped without reasonable suspicion[?]" (Commonwealth's brief at 8.)

Our governing standard of review for Commonwealth appeals of suppression motions is as follows:

> When the Commonwealth appeals a suppression order, we consider only the evidence from [Appellee's] witnesses together with the portion of the Commonwealth's evidence which is uncontroverted. Our standard of review is limited to determining whether the suppression court's factual findings are supported by the record, but we exercise *de novo* review over the suppression court's conclusions of law. Further, appellate courts are limited to reviewing only the evidence presented at the suppression

hearing when examining a ruling on a pre-trial motion to suppress. It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

***Commonwealth v. Harris***, 176 A.3d 1009, 1018 (Pa.Super. 2017)

(quotation marks and citations omitted).

This court has held the following when reviewing the legality of a vehicle stop for criminal activity not related to the Motor Vehicle Code:

> The United States Supreme Court in [***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),] and in ***Adams v. Williams***, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), has suggested that even in the absence of probable cause there may be, under certain circumstances, justification for a limited intrusion upon the privacy of an individual. Under these decisions the Court has suggested that a brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining additional information may in fact be reasonable although the officer at that time did not possess probable cause that would justify an arrest. In the ***Terry***, ***supra*** and ***Adams***, ***supra*** decisions, the Court was required to struggle with the balancing of the right of society and the right of an individual in street encounters. Because a motorist's extreme mobility may otherwise allow him to avoid police confrontation, the State has an equally strong interest in these cases in stopping a moving vehicle to freeze momentarily a situation of suspected criminality. However, these decisions have made it clear that to justify the intrusion the police officer must be able to point to specific and articulable facts which taken together with rational inferences from those facts reasonably warranted the intrusion. ***See Adams v. [Williams]***, ***supra***; ***Terry v. Ohio***, ***supra***. Thus, it is also clear that an investigative stop of a moving vehicle[,] to be valid[,] must be based upon objective facts creating a reasonable suspicion that the detained motorist is presently involved in criminal activity.

*Commonwealth v. Feczko*, 10 A.3d 1285, 1288 (Pa.Super. 2010), *appeal denied*, 25 A.3d 327 (Pa. 2011), quoting *Commonwealth v. Murray*, 331 A.2d 414, 418 (Pa. 1975) (some brackets in original).

> When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.

*Commonwealth v. Barber*, 889 A.2d 587, 593-594 (Pa.Super. 2005), quoting *Commonwealth v. Korenkiewicz*, 743 A.2d 958, 964 (Pa.Super. 1999) (*en banc*) (citations omitted).

In the instant appeal, the specific facts articulated by Officer Bierly warranted a stop of appellee's vehicle, as the record indicates that Officer Bierly was provided with specific and reliable information to support a reasonable suspicion that criminal activity was occurring. During the suppression hearing, Officer Bierly provided the following testimony:

> Q     Who did you make contact with?
>
> A     I made contact with [A.S.] who told me that he[r] sister was being harassed, and then made contact with [R.] who told me that her ex-boyfriend, [B.G.], was riding around with his friends. Kept riding by the house and shouting obscenities and giving the finger.

Q      And did [A.S.] identify anybody else in the motor vehicle besides [B.G.]?

A      Um, they identified [B.G.] and they weren't positive on the other individuals in the car.

Q      Okay.  And were -- did they ask you to do something as a result of this activity?

A      Yeah, they asked me to make contact with [B.G.] and get him to stop harassing them or driving by the house.

. . . .

Q      Before I ask you the next question I want to back up a little bit.  Did they provide you with a description of the automobile in question?

A      Yeah, a silver or gold sedan.

Q      Okay.  And . . . did you see a vehicle close to that description go by your location?[3]

A      Yeah, I saw a silver Toyota sedan and I could see [B.G.] seated in the passenger seat.

Q      And I take it you had prior contact with [B.G.] that's how you know him?

A      Yes.

Q      As a result of that car passing by you what did you do, Officer?

A      I performed a traffic stop on the vehicle.  The driver of the vehicle pulled the vehicle into -- there's a lane in front of the YMCA.

Q      Okay.  What was the basis of you activating your overhead lights and initiating a traffic stop?

_____

[3] Officer Bierly had left the S.'s house and was in the area of Allegheny Street and Wylie Street in Jersey Shore.  (*See* notes of testimony, 9/28/17 at 14.)

A The basis was that I was notified of a harassment issue and it matched the description. Four individuals in the car. I wanted to stop the vehicle to try to end this misconduct.

Q Okay. And what -- I take it you approached the vehicle; is that correct?

A Yes, I did.

Q And if I did ask you that question, I apologize. What -- where was [B.G.] in the vehicle?

A He was in the front passenger seat.

Q And was this the information provided by the [S.] ladies as to his location?

A Yes.

Notes of testimony, 9/28/17 at 13-15.

As noted above, our cases dictate that in order to initiate an investigative stop of a motor vehicle based on information obtained from a third party, the information must be specific and reliable enough to justify reasonable suspicion of criminal activity. Officer Bierly's testimony reflects that A.S. and R.S. specifically told him that B.G. was riding around with a group of his friends in a gold or silver sedan, and that B.G. was engaged in criminal activity—in this case, harassment. Shortly after speaking with A.S. and R.S., Officer Bierly observed B.G. riding in the passenger seat of a silver Toyota sedan in a manner consistent with the information that he was provided. Accordingly, Officer Bierly possessed the requisite reasonable

suspicion to initiate a traffic stop of appellee's vehicle. Officer Bierly was permitted to perform an investigatory detention only for as long as necessary to dispel the suspicion of criminal activity. *Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000). In this case, the initial purpose of the stop was to talk to B.G. to give him a warning that if he continued to harass R.S., he would be cited for harassment. (Notes of testimony, 9/28/17 at 17.)

Appellee argued, and the trial court concluded, that the entire stop was illegal because Officer Bierly was concerned with suspicious criminal behavior of the **passenger**, B.G., not the **driver**, appellee. (Trial court order and opinion, 10/12/17 at 4-5.) This distinction is misplaced. An officer can stop a vehicle based on reasonable suspicion of alleged criminal activity occurring by anyone in the vehicle, not just the driver. *See*, *e.g.*, *U.S. v. Hensley*, 469 U.S. 221, 226-27 (1985); *U.S. v. Mathurin*, 561 F.3d 170, 173 (3d Cir. 2009). Here, the officer had reasonable suspicion to stop the car to talk with B.G., a passenger in the vehicle.

The trial court then overlooked the events that occurred after the car was validly stopped and that supported the subsequent arrest of the driver and search of the vehicle. As the Commonwealth argued at the suppression hearing, the strong odor of burnt marijuana that the officer noticed coming from the car gave the officer an independent basis to question to the driver:

> The basis of the officer initiating the traffic stop was the information provided by the [S.] girls that [B.G.] was involved [in] harassing activity. It was not until he encountered [B.G.] that he detected the strong

> odor emanating from within the vehicle that he then effectuated a traffic stop involving the driver.
>
> Without belaboring the point, the officer had reasonable suspicion that [B.G.] was involved in some sort of activity, which enabled him to stop the vehicle. Upon approaching the vehicle is when he then got a higher level of suspicion of probable cause that possibly the operator was operating the vehicle under the influence when he could detect a very strong odor of marijuana coming from the passenger side that he asked [appellee] to remove himself from the driver's side at which point in time, again, he detected a strong odor of marijuana.

Notes of testimony, 9/28/17 at 24.

We agree that the strong odor of burnt marijuana coming from inside the car gave the officer independent reasonable suspicion to question appellee, as the driver of the vehicle. *See **Commonwealth v. Kemp***, 961 A.3d 657, 668 (Pa. Super. 2015). As Officer Bierly testified, once he detected the strong odor of marijuana, he "then made contact with the driver"; the strong odor of marijuana is what caused him to proceed further. (Notes of testimony, 9/28/17, at 17.) The marijuana smell gave the officer probable cause to search the vehicle. The search resulted in the discovery of alcohol in the vehicle, which was followed by the consented blood draw from the driver.

The evidence obtained as a result of the traffic stop is admissible. Therefore, we find that the trial court abused its discretion when it determined that the Commonwealth failed to establish "that the evidence seized from [appellee's] person and vehicle was legally obtained," and we remand this

case to the trial court for further proceedings.  (Trial court opinion and order, 10/12/17 at 5.)

Order reversed.  Case remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/04/2018

- 11 -